## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| _____ ) | |
| B&T USA, LLC and B&T AG, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. |
| ) | |
| vs. ) | |
| ) | |
| ) | **JURY TRIAL DEMANDED** |
| SUREFIRE, LLC ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

## DECLARATORY JUDGMENT COMPLAINT OF
## PATENT INVALIDITY AND NONINFRINGEMENT

Plaintiffs B&T USA, LLC ("B&T USA") and B&T AG ("B&T AG") (collectively, "B&T" or "Plaintiffs"), by and through their undersigned counsel, and in support of this Declaratory Judgment Complaint against Defendant SureFire, LLC ("SureFire" or "Defendant"), do hereby allege and aver as follows:

### NATURE OF THE ACTION

1.     This case involves unlawful attempts by Defendant to force B&T to cease manufacturing, marketing, and selling, and interfere with B&T's sales and contractual relationships for sales of, a device that Defendant alleges infringes its U.S. Patent No. 7,676,976 ("the '976 Patent" or the "Patent-in-Suit") directed to a

firearm suppressor mounting system ("Accused System"). A true and correct copy of the '976 Patent is attached as **Exhibit 1**.

2.    Defendant's campaign against B&T began when, on February 27, 2025, Defendant caused a letter to be sent to B&T USA accusing B&T USA of "potentially infring[ing] on SureFire's patent," without identifying the patent, by "making, using, and/or selling an adapter compatible with SureFire's patented SOCOM Fast-Attach® line of suppressor-mounting muzzle devices." A true and correct copy of the "February 27, 2025 Demand Letter" is attached as **Exhibit 2**.

3.    Defendant ramped up its campaign against B&T when it caused a second letter to be sent to B&T USA and B&T AG on March 20, 2025, directly accusing B&T of infringing the '976 Patent by "unlawfully manufactur[ing] and market[ing] muzzle devices that incorporate SureFire's patented suppressor mounting system." A true and correct copy of the "March 20, 2025 Demand Letter" is attached as **Exhibit 3**.

4.    As explained in greater detail below, the '976 Patent is invalid at least pursuant to 35 U.S.C. § 102 because, *inter alia*, the Accused System was offered for sale in the United States more than one year before the application that resulted in the '976 Patent was filed.

5.    Accordingly, Plaintiffs bring this action seeking declarations under the Declaratory Judgment Act (28 U.S.C. § 2201) that the '976 Patent is invalid and

that Plaintiffs do not infringe any valid or enforceable claim of the '976 Patent. Plaintiffs further seek relief for Defendant's breach of contract and tortious interference.

## THE PARTIES

6.     Plaintiff B&T AG is a privately-owned limited company organized and existing under the laws of Switzerland with its principal place of business located at Tempelstrasse 6, 3608 Thun, Switzerland.

7.     Plaintiff B&T AG is a Swiss defense supplier, originally founded in 1991, and specializing in the design and manufacturing of firearms and tactical components like sound suppressors and rail systems.

8.     Plaintiff B&T USA, LLC is a limited liability company organized and existing under the laws of Florida with its principal place of business located at 6801 N 54th Street, Suite 111, Tampa, Florida 33610.

9.     Plaintiff B&T USA, LLC is a US-based firearms, suppressor, and accessories manufacturer operating under license of B&T AG.

10.     Upon information and belief, Defendant SureFire, LLC is a limited liability company organized and existing under the laws of California with its principal place of business located at 18300 Mount Baldy Circle, Fountain Valley, California 92708.

11.     Upon information and belief, Defendant SureFire, LLC is also a US-based firearms, suppressor, and accessories manufacturer.

## JURISDICTION AND VENUE

12.     The Court has original and exclusive subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b) because this Complaint states claims arising under Acts of Congress, including the Patent Act, i.e., 35 U.S.C. § 101 *et. seq.*

13.     The Court also has original and exclusive subject matter jurisdiction over these claims because this Complaint arises under the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202), in that it involves an actual case or controversy due to Defendant's accusation that Plaintiffs infringe the '976 Patent and its demands that Plaintiffs cease manufacturing, marketing, and selling its Accused System.

14.     This Court has jurisdiction over Plaintiffs' claims under the laws of Florida based upon principles of supplemental jurisdiction and in accordance with 28 U.S.C. § 1367(a), in that the Florida state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

15.     Alternatively, this Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the action concerns citizens from

4

different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

16.    This Court has *in personam* jurisdiction over Plaintiff B&T USA in that B&T USA is a limited liability company conducting business in this state and in this district and division. B&T USA is the US operation by license from B&T AG.

17.    This Court has *in personam* jurisdiction over Defendant SureFire because Defendant is conducting business in this state and in this district and division and purposely directed its activities toward Florida by knowingly and repeatedly directing cease and desist letters into this district, not least as evidenced by their unlawful attempt to force B&T USA, an entity known to be headquartered in Florida, and in this district, to cease manufacturing, marketing, and selling the lawful Accused System. Defendant should reasonably be expected to be subject to *in personam* jurisdiction in this district.

18.    Upon information and belief, Defendants have intentionally committed the acts complained of herein knowing that the harm would be suffered by Plaintiffs in this state and in this district.

19.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 in that Defendant is transacting business in this district and because a substantial part of the events giving rise to Plaintiffs' claims occurred in the Middle District of Florida.

## STATEMENT OF FACTS

### *The '976 Patent*

20.    U.S. Patent No. 7,676,976 is titled "Systems for attaching a noise suppressor to a firearm" and issued from Application No. 11/171,178, which was filed on June 29, 2005 ("the '178 Application"). **Exhibit 1**; *see also* the USPTO Electronic File Wrapper of the '178 Application attached as **Exhibit 4** to this Complaint.

21.    The '178 Application, filed on June 29, 2005, was a continuation-in-part ("CIP") application tracing priority to United States Patent Application 10/703,971 ("the '971 Application"), which itself was filed on November 6, 2003. **Exhibit 5**. The '971 Application issued as United States Patent No. 6,948,415 ("the '415 Patent") on September 27, 2005. **Exhibit 6**. The '415 Patent issued with a total of 87 claims and expired on November 6, 2023, following the expiration of the 20-year patent term. *Id*.

22.    Just before the '415 Patent issued, the patent applicant filed the '178 Application. **Exhibit 4** at 255-336. As filed, the '178 Application included 26 pages of specification, 26 pages of claims, and 5 sheets of drawings. *Id*. at 256.

23.    After filing, the '178 Application went into the queue to be examined by the USPTO. On June 5, 2006, the Applicant filed a preliminary amendment enclosing replacement drawing sheets. *Id*. at 250-252.

6

24.    Subsequently, on December 13, 2006, the Applicant filed a Supplemental Information Disclosure Statement ("IDS") with the USPTO. *Id*. at 247-249. In the information disclosure statement, the Applicant stated as follows:

> The accompanying unpublished Brugger & Thomet drawing (noted thereon as drawn 7 May 2002), which was privately communicated to applicants by Brugger & Thomet in November 2005, shows a noise suppressor having an eccentric collar and ring arrangement for attaching the noise suppressor to a firearm's muzzle brake. It is applicants' present understanding that noise suppressors employing the design shown in this unpublished drawing were marketed in Europe by Brugger & Thomet since about 2002 under the designation ROTEX II.

*Id*. at 248. The IDS was signed by attorney David Weiss who further stated: "The person making this Information Disclosure Statement is the attorney who signs below on the basis of information supplied by or on behalf of the inventors and information in the attorney's file." *Id*. The IDS form PTO/SB/08B (09-06) further provides as follows: "Brugger & Thomet AG (Switzerland), unpublished drawing No. SD-988201, drawn 7 May 2002". *Id*. at 249. The reference to the Brugger & Thomet AG "unpublished drawing" appears on the face of the '976 Patent. **Exhibit 1** at 2. However, the statement regarding the design being "marketed in Europe by Brugger & Thomet since about 2002 under the designation ROTEX II" does not appear on the face of the patent. **Exhibit 1**.

25.    On September 18, 2008, the USPTO Examiner entered a restriction requirement identifying three invention groups, Group I including Claims 1-16,

Group II including Claims 17-29, and Group III including claims 30-37. **Exhibit 4** at 240-245.

26.    The Applicant responded to the restriction noting its traverse and amendments to the claims. *Id*. at 175. At the same time, the Applicant amended the application to include a substitute specification and amendments to the claims. *Id*. at 147-239.

27.    On January 28, 2009, the USPTO Examiner issued a non-final rejection, which allowed certain claims but noted the presence of non-elected claims. *Id*. at 133-137.

28.    Applicant responded canceling non-elected claims. *Id*. at 128-132.

29.    On April 9, 2009, the USPTO Examiner issued a Notice of Allowance. *Id*. at 115-127.

30.    On July 9, 2009, the Applicant responded by filing a request for continued examination and by adding new claims 89-100. *Id*. at 82-108.

31.    Shortly thereafter, the USPTO Examiner issued a notice of allowance. *Id*. at 69-81. The Applicant paid the issue fee on November 2, 2009, *id*. at 59, and an issue notification was issued on February 24, 2010. *Id*. at 55. The '178 Application issued on March 16, 2010 as the '976 Patent. *Id*.

32.    On March 14, 2012, the Applicant/Patentee filed a Request for Certificate of Correction noting several purported errors. *Id*. at 42-47.

33.    Subsequently, in a series of communications, the USPTO issued the requested certificate of correction. *Id*. at 2-22.

### Plaintiffs Sold the Rotex System Three Years Before the '178 Application was Filed

34.    In May 1991, B&T AG, formerly Brügger & Thomet AG, was established by Karl Brügger and Heinrich Thomet to design and produce some of the industry's most advanced firearm suppressors. Mr. Brügger subsequently became the sole owner of what is now known as B&T AG.

35.    B&T AG has grown considerably over the years, going on to produce its own line of complete firearms in addition to its tactical components like sound suppressors and rail systems, to become a world leader in complete, state-of-the-art tactical weapon systems.

36.    In 2001, B&T AG developed an experimental quick-detach suppressor mount intended for use with NATO flash hiders, allowing suppressors to be mounted without the use of tools.

37.    The core mechanism of the quick-detach suppressor mount utilized a rotational locking method, which led to the system being named "Rotex", derived from ROTation and fixation, ("Rotex System").

38.    In May 2002, B&T AG manufactured the first prototypes of the Rotex System in caliber .223 Remington, using titanium. These samples were tested internally and incrementally improved.

39.    On August 13, 2002, the first 15 units of the "Rotex-II" titanium suppressors with the Rotex System were exported to DS Arms Inc. in the United States. The engineering drawings of the suppressors shipped to the United States ("B&T Engineering Drawings") are attached hereto as **Exhibit 7**. The corresponding Swiss export license bore the number 316695, applied for on July 19, 2002, and approved on July 22, 2002 ("B&T Export Documentation"). This B&T Export Documentation is attached as **Exhibit 8** and a version with a rough English translation is attached as **Exhibit 9**. Relevant dated portions are reproduced below:



**Exhibit 8**.

40.     These suppressors were subsequently delivered to a U.S. government end-user, the Naval Warfare Center as reflected on the face of the B&T Export Documentation and as reproduced in relevant part below:



**Exhibit 8**.

41.     As reflected in the B&T Export Documentation, the suppressors exported to the United States were to be used with .223 Remington rifles:



**Exhibit 8**.

42.     Later in 2002, B&T AG exhibited at the GPEC trade fair in Münster, Germany, at a combined booth with B&T AG, Aimpoint, and Defendant SureFire ("2002 Münster Trade Fair"). At this event, B&T AG publicly displayed the Rotex-II titanium suppressor with the Rotex System.

43.     At the 2002 Münster Trade Fair, a marketing employee of Defendant Mr. Cameron Hopkins, took digital photographs of B&T AG's suppressor and

specifically of the Rotex System mounting interface. Defendant's European Sales Director at the time Mr. Einar Cronstedt, also witnessed and acknowledged B&T AG's suppressor and mount.

### *Defendant Knowingly Failed to Disclose the Accused System as Prior Art*

44.    At least as early as 2005, B&T AG learned of the '178 Application filed by SureFire that appeared to cover a mounting mechanism similar to B&T AG's Rotex System. By that point, B&T AG was manufacturing a suppressor with the Rotex System for use with Heckler & Koch's ("HK") MP7.

45.    When B&T AG learned of the application, it contacted the owner of Defendant, Mr. John Matthews, to remind SureFire that B&T AG's Rotex System had already been in the market, including for sale in the United States, for years prior to SureFire's patent application and that SureFire had been aware of the Rotex System since 2002. B&T AG provided the B&T Engineering Drawings and the B&T Export Documentation to SureFire at that time.

46.    SureFire provided the Rotex System engineering drawings to the USPTO in the IDS of December 2006 indicating that they were "unpublished". **Exhibit 4** at 248. While SureFire also indicated that the Rotex II was "marketed in Europe by Brugger & Thomet since about 2002", SureFire failed to mention its possession of the Export Documentation proving the system was sold in the US, including to the US Navy in 2002. *Id*.

47.    SureFire's glaring omissions in its IDS were intentionally misleading. Had SureFire attached the B&T Export Documentation and/or provided the USPTO with evidence of B&T's sales in the United States in 2002, all of which SureFire had in its possession at the time, the USPTO would have rejected the patent claims under 35 U.S.C. § 102.

48.    B&T AG informed SureFire that if SureFire ever sought to enforce its patent against B&T or its customer(s) that B&T would challenge the patent based on its prior sold Rotex System.

49.    SureFire agreed that it would never pursue any legal action against B&T or its customer(s) for any claims relating to the '178 Application or any resulting patent.

### Defendant Forces Plaintiffs' Customer to Cease Selling Plaintiffs' Rotex System

50.    B&T manufactures a product called the NOX SF muzzle device for the Sons of Liberty Gun Works ("SOLGW") incorporating the Rotex System.

51.    In early 2025, B&T learned via verbal communications that SOLGW had been threatened by Defendant regarding the NOX SF muzzle device.

52.    On or about January 16, 2025, B&T USA informed Defendant that the SOLGW device was manufactured by B&T and was thus protected by the parties' agreement and of the fact that B&T's Rotex System pre-dated Defendant's patent application.

53.     On January 17, 2025, Defendant nevertheless proceeded with sending a cease-and-desist letter to SOLGW resulting in SOLGW removing the B&T-manufactured product from sale. SOLGW told B&T that it needed to cancel orders that had not been fulfilled because of the threat from Defendant.

54.     On February 27, 2025, Defendant caused a letter to be sent to B&T USA accusing B&T USA of "potentially infring[ing] on SureFire's patent," without identifying the patent, by "making, using, and/or selling an adapter compatible with SureFire's patented SOCOM Fast-Attach® line of suppressor-mounting muzzle devices." **Exhibit 2**.

55.     On March 4, 2025, B&T responded to Defendant's letter requesting the patent number(s) for any and all patents that SureFire contends are "potentially infringe[d]." A true and correct copy of the March 4, 2025, B&T Response is attached as **Exhibit 10**.

56.     On March 20, 2025, Defendant sent a second letter to B&T USA and B&T AG directly accusing B&T of infringing the '976 Patent by "unlawfully manufactur[ing] and market[ing] muzzle devices that incorporate SureFire's patented suppressor mounting system." **Exhibit 3**.

## COUNT I – DECLARATION OF INVALIDITY OF
## U.S. PATENT NO. 7,676,976
### 28 U.S.C. § 2201; Obviousness-Type Double Patenting

57.     Plaintiffs restate and incorporate by reference the allegations in paragraphs 1-56 as if fully set forth herein.

58.     The '976 Patent is invalid pursuant to the judicially-created doctrine of "obviousness-type double patenting" because the claims of the '976 Patent are not patentably distinct from the Claims of the '415 Patent from which the '976 Patent claims priority.

59.     The Federal Circuit has explained obviousness-type double patenting as follows:

> While often described as a court-created doctrine, obviousness-type double patenting is grounded in the text of the Patent Act. *See In re Longi,* 759 F.2d 887, 892 (Fed. Cir. 1985); *see also Boehringer Ingelheim Int'l. GmbH v. Barr Labs., Inc.,* 592 F.3d 1340, 1346 (Fed. Cir. 2010); *Eli Lilly & Co. v. Barr Labs., Inc.,* 251 F.3d 955, 967 (Fed. Cir. 2001). Section 101 reads: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, ... may obtain *a* patent therefor." 35 U.S.C. § 101 (emphasis added). Thus, § 101 forbids an individual from obtaining more than one patent on the same invention, *i.e.,* double patenting. As this court has explained, "a rejection based upon double patenting of the obviousness type" is "grounded in public policy (a policy reflected in the patent statute)." *Longi,* 759 F.2d at 892 (emphasis removed).

*Abbvie Inc. v. Mathilda and Terence Kennedy Inst. of Rheumatology Tr.*, 764 F.3d 1366, 1372 (Fed. Cir. 2014).

60.    The judicially-created doctrine of "obviousness-type double patenting … appl[ies] where two patents that claim the same invention have different expiration dates." *Abbvie Inc. v. Mathilda and Terence Kennedy Inst. of Rheumatology Tr.*, 764 F.3d 1366, 1374 (Fed. Cir. 2014). "'A later claim that is not patentably distinct from,' i.e., 'is obvious over[ ] or anticipated by,' an earlier claim is invalid for obviousness-type double patenting.'" *Id.* (quoting *Sun Pharm. Indus., Ltd. v. Eli Lilly & Co.*, 611 F.3d 1381, 1385 (Fed. Cir. 2010) (alterations in original) (itself quoting *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 968 (Fed. Cir. 2001)).

61.    During prosecution of the '976 Patent, the applicant/patentee did not file a terminal disclaimer, and, as noted above, the '415 Patent expired on November 6, 2023. Further, where, as here, the earlier patent "has expired [ ] a terminal disclaimer cannot cure" the double patenting. *In re Lonardo*, 119 F.3d 960, 965 (Fed. Cir. 1997).

62.    Here, the claims of the '976 Patent are not patentably distinct from the claims of the '415 Patent.

63.    Because the patents are linked by a common priority chain, both the '415 and the '976 Patents use overlapping language and the inventor did not choose to be a lexicographer in the '976 Patent as a way to distinguish terms in one patent from the next. Accordingly, as used in the claims, the patent terms have the same essential meaning.

64.    Further, a comparison of discrete claims in the '976 Patent reveals that they are the same as or obvious variants from claims in the '415 Patent.

65.    By way of one example, Claim 1 of the '976 Patent is not patentably distinct from Claim 57 which depends from Claim 51 of the '415 Patent as exemplified in the chart below:

| The '976 Patent, Claim 1 | The '415 Patent, Claims 51, 57 |
|---|---|
| Auxiliary apparatus for attachment to a firearm including a barrel having a longitudinal axis, comprising the combination of:<br><br>a fixture operatively configured to be attached to the muzzle of the barrel coaxially therewith and including an annular ridge;<br><br>an auxiliary device including a bore for coaxially receiving said fixture, a collar having an outer surface eccentric about said bore, and a ring having an annular wall rotatably and threadedly secured to said outer surface of said collar, said ring including a radial wall having a circular opening eccentric relative to said annular wall, said opening being concentric relative to said bore at a first rotational position of said ring for permitting said ring to pass over said ridge, said opening being eccentric relative to said bore at a second rotational position of said ring for causing said radial wall to block passage of said ring over said ridge, and<br><br>a locking device for releasably locking said ring in said second rotational position. | [51] Auxiliary apparatus for attachment to a fixture coaxially secured to the barrel of a firearm having a longitudinal axis, the fixture including an annular ridge, the auxiliary apparatus comprising the combination of:<br><br>an auxiliary device having a bore for coaxially receiving the fixture, said device including a collar having an outer surface eccentric about said bore, and a ring rotatably secured to said outer surface of said collar, said ring including a radial wall having a circular opening eccentric relative to said outer surface of said collar, said opening being concentric relative to said bore at a first rotational position of said ring for permitting said ring to pass over the ridge, said opening being eccentric relative to said bore at a second rotational position of said ring for causing said radial wall to block passage of said ring over the ridge.<br><br>[57] said annular wall of said ring is threadedly secured to said outer surface of said collar. |

66.     SureFire, LLC is the owner of both the '976 Patent and the '415 Patent. Both patents share common inventors John W. Matthews and Brooke C. Smith. One or more claims of the '976 Patent are not patentably distinct from one or more claims of the '415 Patent. Accordingly, one or more claims of the '976 Patent are invalid due to the judicially-created doctrine of non-statutory double patenting, grounded in 35 U.S.C. § 101.

WHEREFORE, Plaintiffs demand judgment against Defendant for:

a.      A declaration pursuant to 28 U.S.C. § 2201 that the '976 Patent is invalid pursuant to the doctrine of non-statutory double patenting including obviousness-type double patenting;

b.      That this case be declared an exceptional case pursuant to 35 U.S.C. § 285

c.      An award of costs and reasonable and necessary attorneys' fees, pursuant to 28 U.S.C. § 2202 and 35 U.S.C. § 285; and

d.      Such other and further relief as this Court deems just and proper.

### COUNT II – DECLARATION OF INVALIDITY OF U.S. PATENT NO. 7,676,976 28 U.S.C. § 2201; 35 U.S.C. §102

67.     Plaintiffs restate and incorporate by reference the allegations in paragraphs 1-56 as if fully set forth herein.

68.    The '976 Patent is invalid pursuant to 35 U.S.C. § 102 because the Accused System was offered for sale in the United States more than one year before the earliest effective filing date of the '976 Patent.

69.    In light of Defendant's cease-and-desist letters to B&T and to B&T's customer SOLGW, there exists a substantial, real, and immediate controversy between Plaintiffs and Defendant concerning the validity of the '976 Patent.

70.    Defendant's conduct towards Plaintiffs, including having sent several threatening letters into this district, as well as to Plaintiffs' customer, clearly demonstrates Defendant's intent to continue to threaten Plaintiffs with potential or actual litigation.

71.    This controversy warrants the issuance of a declaratory judgment of invalidity. A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights and obligations vis-à-vis the '976 Patent.

72.    Plaintiffs therefore respectfully seeks a judicial declaration that the '976 Patent is invalid pursuant to 25 U.S.C. § 102.

WHEREFORE, Plaintiffs demand judgments against Defendant for:

a.    A declaration pursuant to 28 U.S.C. § 2201 that the '976 Patent is invalid pursuant to 25 U.S.C. § 102;

b.    That this case be declared an exceptional case pursuant to 35 U.S.C. § 285;

c.      An award of costs and reasonable and necessary attorneys' fees, pursuant to 28 U.S.C. § 2202 and 35 U.S.C. § 285; and

d.      Such other and further relief as this Court deems just and proper.

## COUNT III – DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,676,976
### 28 U.S.C. § 2201

73.      Plaintiffs restate and incorporate by reference the allegations in paragraphs 1-56 as if fully set forth herein.

74.      Plaintiffs have not infringed and do not infringe any valid and enforceable claim of the '976 Patent.

75.      Additionally, Plaintiffs are not liable for any induced, contributory, divided, or any other indirect infringement of any valid and enforceable claim of the '976 Patent.

76.      Specifically, as explained in greater detail above, the '976 Patent is not valid pursuant to 35 U.S.C. § 102 because B&T offered the Accused System for sale more than one year before the patent application was filed. Likewise, the '976 Patent is not valid pursuant to the judicially-created doctrine of non-statutory double patenting including obviousness-type double patenting.

77.      In light of Defendant's cease-and-desist letters to B&T and to B&T's customer SOLGW, there exists a substantial, real, and immediate controversy

between Plaintiffs and Defendant concerning Plaintiffs' alleged infringement of the '976 Patent.

78.    Defendant's conduct towards Plaintiffs, including having sent several threatening letters into this district, as well as to Plaintiffs' customer, clearly demonstrates Defendant's intent to continue to threaten Plaintiffs with potential or actual litigation.

79.    This controversy warrants the issuance of a declaratory judgment of invalidity. A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights and obligations vis-à-vis the '976 Patent.

80.    Plaintiffs therefore respectfully seeks a judicial declaration that they do not directly, indirectly, or otherwise infringe any valid and enforceable claim of the '976 Patent.

WHEREFORE, Plaintiffs demands judgments against Defendant for:

a.    A declaration pursuant to 28 U.S.C. § 2201 that Plaintiffs do not directly, indirectly or otherwise infringe any valid and enforceable claim of the '976 Patent because the '976 Patent is invalid pursuant to 25 U.S.C. § 102;

b.    That this case be declared an exceptional case pursuant to 35 U.S.C. § 285;

c.     An award of costs and reasonable and necessary attorneys' fees, pursuant to 28 U.S.C. § 2202 and 35 U.S.C. § 285; and

d.     Such other and further relief as this Court deems just and proper.

## <u>COUNT IV – BREACH OF CONTRACT</u>

81.    Plaintiffs restate and incorporate by reference the allegations in paragraphs 1-56 as if fully set forth herein.

82.    Plaintiffs and Defendant entered into a valid and enforceable verbal agreement that Plaintiffs would not challenge the validity of Defendant's '976 Patent so long as Defendant never asserted the '976 Patent against Plaintiffs or its customers ("Agreement").

83.    Plaintiffs performed all obligations and/or conditions precedent to the enforcement of the Agreement.

84.    Defendant has materially breached the Agreement by sending cease and desist letters to Plaintiffs and their customers asserting that Plaintiffs are infringing the '976 Patent.

85.    As a direct and proximate result of Defendant's contractual breach, Plaintiffs have been damaged in an amount to be proven at trial.

WHEREFORE, Plaintiffs demand judgments against Defendant for:

a.     Damages suffered as a result of Defendant's breach of the Agreement; and

b.      Such other and further relief as this Court deems just and proper.

## COUNT IV – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

86.      Plaintiffs restate and incorporate by reference the allegations in paragraphs 1-56  as if fully set forth herein.

87.      Through their improper assertion of patent infringement in breach of the parties' Agreement, and knowing that the '976 Patent is invalid, all as described above, Defendants have intentionally and improperly interfered with Plaintiffs' relationship with its customer and its prospective customers

88.      Defendant's knowing and intentional conduct has resulted in harm to Plaintiffs including Plaintiffs not being able to do business with its customers.

89.      By deceiving Plaintiff's customers into believing that Plaintiffs' devices infringe Defendant's patent, Defendant has improperly diverted sales from Plaintiffs and has prevented Plaintiffs from servicing their customers.

90.      But for Defendant's wrongful conduct, Plaintiffs likely would not have lost accounts and would have made further sales in an amount to be proven at trial.

91.      Defendant's conduct has caused, and is continuing to cause, irreparable injury to Plaintiffs, including to its reputation and goodwill, and Plaintiffs have no adequate remedy at law. Unless such unauthorized use is enjoined, Plaintiffs will continue to be irreparably harmed.

92.     Defendant's conduct, as described above, has been willful, wanton, reckless, and in total disregard to Plaintiffs' rights.

93.     By reason of Defendant's misconduct, Plaintiffs have suffered, and will continue to suffer, monetary damages and loss of goodwill.

WHEREFORE, Plaintiffs demands judgment against Defendant for:

a.     Damages suffered by Plaintiffs as a result of Defendant's unlawful actions;

b.     Prejudgment and post-judgment interest at the maximum lawful rate; and

c.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs B&T USA LLC and B&T AG hereby demand a trial by jury of all issues so triable.

This the 30th day of May, 2025.

Respectfully Submitted,

/s/ J. Todd Timmerman
J. Todd Timmerman (Lead Counsel)
Florida Bar No. 0956058
ttimmerman@shumaker.com
SHUMAKER, LOOP & KENDRICK, LLP
101 E. Kennedy Boulevard, Suite 2800
Tampa, Florida 33602
Telephone: (813) 229-7600

Samuel Alexander Long, Jr. (*Pro Hac Vice to be filed*)
along@shumaker.com
Christina Davidson Trimmer (*Pro Hac Vice to be filed*)
ctrimmer@shumaker.com
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon Street, Suite 2200
Charlotte, North Carolina 28280-0002
Telephone: (704) 375-0057

*Attorneys for Plaintiffs B&T USA, LLC and B&T AG*